[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 13, 2002
THOMAS K. KAHN
CLERK

No. 00-14209

D.C. Docket No. 99-07588 CV-WPD

ARAWAK AVIATION, INC.,
ZEBRA INVESTMENTS, L.C.,

Plaintiffs-Appellants,

versus

INDEMNITY INSURANCE CO. OF
NORTH AMERICA,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Florida

**(March 13, 2002)**

Before TJOFLAT and WILSON, Circuit Judges, and RESTANI*, Judge.

---

*Honorable Jane A. Restani, Judge, U.S. Court of International Trade, sitting by designation.

TJOFLAT, Circuit Judge:

This case involves a dispute between Indemnity Insurance ("Indemnity") and Arawak Aviation, Inc. ("Arawak"), an Indemnity policy holder, over aircraft insurance coverage. Arawak sued Indemnity for a declaration that recent damage to one of Arawak's airplanes was covered by its policy with Indemnity. The district court granted a motion by Indemnity for summary judgment, which we now affirm.

I.

The facts of this case are straightforward and undisputed. On February 24, 1998, the pilot of a 1969 British Aerospace BH-125-400A aircraft owned by Arawak neglected properly to secure the aircraft's oil cap during a pre-flight check-up of the oil level. During the airplane's subsequent flight, its crew noticed a low oil pressure indication and immediately landed the plane. A subsequent inspection revealed that the engine lost 4.5 quarts of oil during the short flight, and that the loss of oil pressure caused it to generate excessive heat and suffer considerable damage.

Prior to this incident, Arawak purchased an aircraft insurance policy for the

2

plane from Indemnity.  On February 25, 1998, it submitted a claim under that policy for the damage that had occurred to the plane's engine the day before. Indemnity denied the claim, asserting that the damage was excluded from coverage under certain provisions of the policy.  Notably, under the express language of the policy, Indemnity would "not cover normal wear and tear or depreciation," and, more specifically, would "not cover the following types of damage to [an] aircraft's engines or auxiliary power units:

- damage caused by heat that results from the operation, or shutdown of the engine.

- damage caused by the breakdown, failure, or malfunction of any engine part or accessory."

Indemnity claimed that the damage incurred on February 24 fell within those exceptions to the policy's physical damage coverage.

On November 10, 1999, Arawak sued Indemnity in the Circuit Court for Broward County, Florida, seeking a declaration of insurance coverage for the

3

damage sustained to the plane's engine.[1]  Shortly thereafter, the case was removed to the United States District Court for the Southern District of Florida based on diversity jurisdiction.[2]  The parties, who stipulated to a joint statement of facts, filed cross-motions for summary judgment; Arawak contended that "[t]he pilots' antecedent negligence (an insured peril) was the proximate/efficient cause of the loss and the subsequent engine heat and mechanical breakdown (excluded perils) were mere incidents of the negligence," while Indemnity relied on the fact that "unambiguous provisions of [the] Policy state that it does not cover the losses for which [Arawak] now make[s] claim."

The district court granted Indemnity's motion for summary judgment.  In reaching this result, the court, in its dispositive order, principally relied on Little Judy Industries, Inc. v. Federal Insurance Co., 280 So. 2d 14 (Fla. 3d Dist. Ct. App. 1973), cert. denied, 284 So. 2d 220 (Fla. 1973), a district court of appeal decision that addressed a factual scenario similar to the one in this case.  In Little Judy, the court determined that damage to an aircraft engine damage due to overheating,

---

[1]  The suit was filed, and this appeal is being prosecuted, by Arawak and Zebra Investments, L.C..  For convenience, we refer to these parties as Arawak.

[2] According to the Notice of Removal, both Arawak and Zebra are Florida companies – Arawak is a corporation and Zebra is a limited liability company – organized under the laws of the state of Florida, while Indemnity is a Pennsylvania corporation, whose principal place of business is in Philadelphia.

which, in turn, may have been caused by negligence, was nonetheless not covered by a policy excluding coverage for mechanical failure. See id. at 15. ("The fact that the failure [of the engine] was traceable to negligence in its repair or to improper repair or assembly of the engine did not make it other than a mechanical failure.") The district court, finding nothing that distinguished this case from Little Judy, applied the holding of the latter to the former and concluded that the damage to airplane was not covered under Arawak's policy with Indemnity.

Arawak appeals the district court's judgment. We review the judgment de novo. Gas Kwik, Inc. v. United Pac. Ins. Co., 58 F.3d 1536, 1538 (11th Cir. 1995).

II.

Our task in this case is, in theory, quite simple: We must interpret the policy that Arawak purchased from Indemnity and determine whether the damage incurred by Arawak's plane on February 24, 1998, was covered by the policy's provisions. In particular, we must determine whether, as Indemnity contends, the damage fell within the exclusionary clauses of the policy. In making this determination, we are required to abide by the Florida rule that "[e]xceptions to coverage in an insurance policy are strictly construed against the insurer and any

5

doubt or ambiguity is resolved in favor of the insured." Hartford Accident & Indem. Co. v. Phelps, 294 So. 2d 362, 364 (Fla. 1st Dist. Ct. App. 1974). We are also mindful, however, of the repeated admonitions of the Florida Supreme Court that "[o]nly when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction is [this] rule apposite." State Farm Mut. Auto. Ins. Co. v. Pridgen, 498 So. 2d 1245, 1248 (Fla. 1986) (quoting Excelsior Ins. Co. v. Pomona Park Bar & Package Store, 369 So. 2d 938, 942 (Fla. 1979)). Therefore, we must first determine whether, under ordinary rules of contract construction, the policy language, upon which Indemnity relied to deny Arawak's claim, was ambiguous.

In denying the claim, Indemnity relied on two exclusionary clauses in the policy. The first deals with general wear and tear of the aircraft:

> **Wear and tear.** We will not cover wear and tear or depreciation. Nor will we cover damage that is caused by and confined to freezing, mechanical failure, or structural or electrical failure. However, if a collision is caused by wear and tear, and the collision is otherwise covered by this policy, we will cover the resulting damage. But we will not cover the part that has suffered wear and tear.

The second specifically deals with wear and tear to engines:

> **Wear and tear to engines.** We will not cover the following types of damage to your aircraft's engines or auxiliary power units:
>
> • damage caused by heat that results from the operation, attempted operation, or shutdown of the engine.

6

- damage caused by the breakdown, failure, or malfunction of any engine part or accessory.

Indemnity asserts that the damage to the aircraft's engine falls within the plain meaning of these exclusions, because it was "caused by heat that result[ed] from the operation . . . of the engine."

The crux of Arawak's counter-argument focuses on the phrase, "caused by," in the exclusionary clauses. Arawak argues that, in interpreting this language, we should consider the efficient cause of the damage, that is, "the one that sets others in motion." Hartford Accident & Indem. Co., 294 So. 2d at 364 (quoting Sabella v. Wisler, 377 P.2d 889, 895 (Cal. 1963)). In other words, it claims that the damage to the aircraft was ultimately "caused by" the negligence of the pilot, who did not screw on the oil cap properly, and not the overheating of the engine. Arawak further asserts that, even if the phrase, "caused by," does not necessarily connote the efficient cause of any damage, this language in the exclusionary clauses is nevertheless ambiguous; hence, we should adopt its interpretation in accordance with Florida law favoring the insured.

Notwithstanding any concerns we might have regarding the applicability of the so-called efficient cause doctrine in Florida law, Arawak's arguments hinge on whether we can conclude that the exclusionary clauses are "susceptible to two different interpretations, each one of which is reasonably inferred from the terms of

7

the [policy]." <u>Miller v. Kase</u>, 789 So. 2d 1095, 1097-98 (Fla. 4th Dist. Ct. App. 2001) (defining contract ambiguity). Put simply, we must consider whether application of the efficient cause doctrine makes sense in the context of <u>this</u> contract before we worry about whether we can apply it under Florida law.

III.

According to its construction of the policy, Arawak believes that it should not matter that the damage to the plane's engine directly resulted from overheating – a cause of damage excluded under the contract – because the overheating was caused by the pilot's negligence – a cause of damage covered by the policy. Following that logic, any "wear and tear" damage due to mechanical failure, which would normally be excluded from coverage under the policy, would be covered if the mechanical failure was the product of some antecedent negligence. Alas, interpreting the exclusionary clauses in this manner would render them meaningless. Mechanical components, like the engine in this case, are not designed to break down or overheat, but do so when they are not maintained. Were we to adopt the approach advocated by Arawak, any wear and tear to the aircraft, which the policy allegedly excludes from coverage, would be nonetheless

covered, if the insured could show that upkeep was not properly performed. In sum, the policy interpretation that Arawak suggests would not only eviscerate the exclusionary clauses, but also encourage policy holders, like Arawak, dangerously to forego maintenance on their aircraft in order to ensure maximum coverage. Such a result would be absurd and therefore unacceptable under Florida law. See Inter-Ocean Cas. Co. v. Hunt, 189 So. 240, 242-43 (Fla. 1939) ("If one interpretation looking to the other provisions of the contract and to its general object and scope would lead to an absurd conclusion, such interpretation must be abandoned, and that adopted which will be more consistent with reason and probability.").

Of course, Arawak contends that its interpretation is consistent with Florida law, because it adopts the efficient causation doctrine, which it claims has been endorsed by Florida courts in such cases as Fire Association of Philadelphia v. Evansville Brewing Associations, 75 So. 196 (Fla. 1917), Hartford Accident and Indemnity Company v. Phelps, 294 So. 2d 362 (Fla. 1st Dist Ct. App. 1974), and Wallach v. Rosenberg, 527 So. 2d 1386 (Fla. 3d Dist. Ct. App. 1988). What Arawak fails to realize, however, is that those cases involved situations in which the efficient cause of the damage was not a necessary antecedent of the damage's direct cause. In Fire Association of Philadelphia, for example, the Florida

9

Supreme Court considered whether a policy, which insured against fire damage but not against explosion damage, would cover a building that was destroyed by an explosion caused by fire. Because fire is not the essential cause of every explosion, the court was able to look at these two factors separately and determine which one was the efficient cause of the damage – without eviscerating the policy's provisions excluding coverage for explosion damage. See Fire Ass'n of Philadelphia, 75 So. at 198 ("While the insurer is not liable for a loss caused by an explosion which was not produced by a preceding fire, yet if the explosion is caused by fire during its progress in the building, the fire is the proximate cause of the loss, the explosion being a mere incident of the fire, and the insurer is liable."); see also Wallach, 527 So. 2d at 1387 (considering the efficient cause of the collapse of sea wall, and finding it to be a question of fact, when two independent factors – water or earth movement (excluded risks) and a neighbor's negligence (a covered risk) – combined to cause the collapse); Hartford Accident & Indem. Co., 294 So. 2d at 363 (determining that a homeowner's policy, which covered damage from pipe leakage but which specifically excluded damage from "water below the surface of the ground," covered damage to a home from settling caused by an underground leak, because "the exclusion was intended to relate only to damage from water not emanating from the plumbing system").

On the other hand, the efficient cause doctrine cannot be incorporated into an insurance policy if doing so would render part of the policy meaningless. See Premier Ins. Co. v. Adams, 632 So. 2d 1054, 1057 (Fla. 5th Dist. Ct. App. 1994) ("[A]n interpretation which gives a reasonable meaning to all provisions of a contract is preferred to one which leaves a part useless or inexplicable.") Such a scenario occurs in the instant case. If we read the efficient cause doctrine into the phrase, "caused by," in the exclusionary clauses of the Indemnity policy, we would make those very same clauses pointless, because, as discussed earlier, negligence (a covered cause of damage) is almost always the efficient cause of "wear and tear" (an excluded cause of damage).

In Little Judy, which the court aptly noted is on all fours with the present case, the district court of appeal noted this very same conundrum:

> [T]he loss was due to mechanical failure of the engine. The fact that the failure thereof was traceable to negligence in its repair or to improper repair or assembly of the engine did not make it other than a mechanical failure. In a great many, if not most instances the mechanical failure of an engine could be attributed to some act of commission by improper or negligent work thereon as occurred her, or to negligent omission to inspect and repair or replace parts where needed, or other neglect in the care of the machine.

Little Judy, 280 So. 2d at 15 (emphasis added). The court in Little Judy ultimately held that the damage to the aircraft in that case fell within the exclusionary provision of the policy and the insured was not entitled to compensation. We are

11

bound to follow this decision, which the Florida Supreme Court chose not to review. See Galindo v. ARI Mut. Ins. Co., 203 F.3d 771, 775 (11th Cir. 2000) ("Absent a decision by the highest state court or persuasive indication that it would decide the issue differently, federal courts follow decisions of intermediate appellate courts in applying state law. Concomitantly, the Florida Supreme Court has held that '[t]he decisions of the district courts of appeal represent the law of Florida unless and until they are overruled by this Court. Thus, in the absence of interdistrict conflict, district court decisions bind all Florida trial courts.'") (quoting Pardo v. State, 596 So.2d 665, 666 (Fla. 1992)) (internal citation omitted); Veale v. Citibank, 85 F.3d 577, 580 (11th Cir. 1996) ("In matters of state law, federal courts are bound by the rulings of the state's highest court. If the state's highest court has not ruled on the issue, a federal court must look to the intermediate state appellate courts.") (internal citations omitted). Even if we were not bound by the district court of appeal's decision, we would nevertheless follow Little Judy's holding, because it comports with Florida law of contract interpretation and, just as important, common sense.

The judgment of the district court is, accordingly,

AFFIRMED.