*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 05a0229p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

MERIDIAN LEASING, INC.,

        *Plaintiff-Appellee,*

    *v.*

ASSOCIATED AVIATION UNDERWRITERS, INC.,
        *Defendant-Appellant.*

No. 04-1184

>

---

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 02-00192—Ellen S. Carmody, Magistrate Judge.

Argued: April 20, 2005

Decided and Filed: May 24, 2005

Before: SUHRHEINRICH and GILMAN, Circuit Judges; ACKERMAN, District Judge.[*]

---

## COUNSEL

**ARGUED:** Barry R. Smith, McCARTHY SMITH LAW GROUP, Portage, Michigan, for Appellant. Jon R. Muth, MILLER, JOHNSON, SNELL & CUMMISKEY, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Barry R. Smith, McCARTHY SMITH LAW GROUP, Portage, Michigan, for Appellant. Jon R. Muth, Mark P. Hunting, MILLER, JOHNSON, SNELL & CUMMISKEY, Grand Rapids, Michigan, for Appellee.

---

## OPINION

---

    HAROLD A. ACKERMAN, District Judge. In this case, the District Court, sitting in diversity, was faced with the task of interpreting the language of an all-risk insurance policy that allegedly covered damage to an aircraft engine caused by an unusual occurrence during start-up. The insurer alleged that the policy's exclusion for wear and tear foreclosed coverage. Applying California law, the District Court found that the term "wear and tear" was ambiguous, and resolved the ambiguity by requiring that damage from wear and tear result from the normal and ordinary operation of the engine. Thus, the District Court granted partial summary judgment for the insured and reserved for trial the question whether the damage resulted from the normal and ordinary operation of the engine. After hearing testimony, the District Court resolved the question in the

---

[*]The Honorable Harold A. Ackerman, United States District Judge for the District of New Jersey, sitting by designation.

negative and awarded damages to the insured. The insurer now appeals the District Court's grant of partial summary judgment resulting from its interpretation of the policy language. We conclude that the parties did not intend the term "wear and tear" to carry a specialized meaning, that the parties intended the policy to cover damage resulting from accidental and fortuitous occurrences, and that the incident that caused the damage to the insured's aircraft engine fell within the scope of coverage. We AFFIRM.

## I.

This appeal presents an intriguing question of law in the guise of a deceptively simple fact pattern. Meridian Leasing, Inc. ("Meridian"), the Appellee in this action, owned a Piper Meridian aircraft ("Aircraft") that it purchased new in March 2001. On August 10, 2001, James Robins, Meridian's owner and the Aircraft's authorized pilot, attempted to start the Aircraft's engine. As Robins was performing this multi-step process, he observed flames emanating from both of the Aircraft's exhaust stacks.

Robins immediately shut down the engine. When this failed to extinguish the flames, Robins attempted to evacuate the Aircraft. Mechanic inspector David Tesser, who witnessed these events, ran to the Aircraft and directed Robins to remain in the cockpit. Tesser then instructed Robins to re-start the engine. This effort succeeded in extinguishing the flames.

For several seconds as the fire burned, the engine operated at a temperature beyond the range in which the engine was designed to operate safely. Indeed, although not part of the District Court's factual findings, there is evidence in the record that the temperature reached 2,260 degrees Fahrenheit for a period of 11 seconds, causing the compressor blade tips to melt and splatter molten metal onto the inside of the engine casing. The excessive internal temperature caused the engine to suffer extensive damage. Meridian subsequently had the engine repaired at a cost of $224,165.53, plus $8,326.36 for engine removal and replacement and $5,356.50 for substitute transportation costs.

Meridian insured the Aircraft under a policy (the "Policy") issued by Associated Aviation Underwriters, Inc. ("AAU"), the Appellant in this matter. Coverage F of the Policy provided "Physical Damage Coverage" on an "All Risk Basis," Joint Appendix ("J.A.") at 154, whereby AAU would "pay for any physical damage loss to the aircraft, including disappearance of the aircraft," J.A. at 157. Meridian filed a claim with AAU for the damage to the Aircraft. AAU denied the claim on the ground that the damage fell within the Policy's exclusion for wear and tear.

Meridian brought this suit against AAU in the United States District Court for the Western District of Michigan, seeking a declaration that the damage to the Aircraft was not wear and tear and that the Policy therefore covered Meridian's claim. The District Court had subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332. Shortly thereafter, the case was assigned to Magistrate Judge Ellen S. Carmody, and the parties consented to the Magistrate Judge exercising full judicial authority pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.[1] Meridian then moved for partial summary judgment on the proper interpretation of the Policy's wear and tear exclusion.

The District Court found that the Policy did not define the term "wear and tear." Applying California law,[2] the District Court held that the term must be given its "ordinary and popular"

---

[1] We will hereafter refer to Judge Carmody as the "District Court."

[2] The Policy apparently did not contain a choice-of-law provision, and the District Court requested briefing from the parties on the applicable law. Meridian urged application of California law. AAU conceded that Michigan's vested rights approach to choice-of-law questions dictated that California law should apply, but nevertheless suggested that the court follow the "trend" toward applying the law of the forum. Def.'s Br. Choice L. at 4, *Meridian Leasing, Inc.*

meaning, which required that the wear and tear arise from "ordinary" or "normal" operation of the Aircraft. *Meridian Leasing, Inc. v. Associated Aviation Underwriters, Inc.*, No. 02-192, slip op. at 10-11 (W.D. Mich. Feb. 14, 2003) (hereinafter "*Meridian Leasing I*"). Accordingly, the District Court granted in part and denied in part Meridian's motion for summary judgment, reserving for trial the sole question whether the damage to the Aircraft arose from "ordinary" or "normal" usage.

On September 24, 2003, the District Court held a bench trial. An Opinion and Factual Findings followed on January 5, 2004. *See Meridian Leasing, Inc. v. Associated Aviation Underwriters, Inc.*, 297 F. Supp. 2d 972 (W.D. Mich. 2004) (hereinafter "*Meridian Leasing II*"). The District Court concluded that the events that caused the damage to the Aircraft were not "normal" or "ordinary" and awarded Meridian $295,333.45 in damages. AAU timely appealed on February 5, 2004. The only issue on appeal is whether the District Court erred in interpreting the wear and tear exclusion so as to require normal or ordinary operation of the Aircraft. This Court has jurisdiction over the present appeal pursuant to 28 U.S.C. § 1291.

**II.**

We review the District Court's grant of partial summary judgment *de novo. Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 903 (6th Cir. 2004). Our review is limited, however, to the evidence before the lower court at the time of its ruling. *Bush v. Rauch*, 38 F.3d 842, 846 (6th Cir. 1994). Questions of contract interpretation, such as those that formed the basis of the District Court's grant of partial summary judgment, generally are considered to be questions of law subject to *de novo* review. *Campbell v. Potash Corp. of Sask., Inc.*, 238 F.3d 792, 797 (6th Cir. 2001). Accordingly, the existence of ambiguity is a *de novo* question for this Court. *Id.* Nevertheless, "[t]he trial court's resolution of ambiguity based on extrinsic evidence may not be overturned unless clearly erroneous." *Id.*

Insurance policies are contracts and are interpreted as such. *Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1115, 988 P.2d 568, 572 (1999). Under California law, a court's primary directive in interpreting a contract is to give effect to the intent of the parties as it existed at the time of contracting. Cal. Civ. Code § 1636; *Safeco Ins. Co. v. Robert S.*, 26 Cal. 4th 758, 763, 28 P.3d 889, 893 (2001). A court must look first to the language of the contract to derive the parties' mutual intent, so long as the language is clear and explicit and does not involve an absurdity. Cal. Civ. Code §§ 1638, 1639; *Cont'l Heller Corp. v. Amtech Mech. Servs., Inc.*, 61 Cal. Rptr. 2d 668, 670 (Ct. App. 1997). California law also requires a court to take the whole of the contract together, giving effect to every part if reasonably practicable to do so. Cal. Civ. Code § 1641; *Ticor Title Ins. Co. v. Rancho Santa Fe Ass'n*, 223 Cal. Rptr. 175, 177 (Ct. App. 1986) ("An interpretation which renders part of the instrument to be surplusage should be avoided."). A court shall give the words of a contract their "ordinary and popular" meaning, unless they are used in a technical sense or a special meaning is given to them by usage, in which case the court shall adhere to the latter meaning. Cal. Civ. Code § 1644; *AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 822, 799 P.2d 1253, 1264 (1990). If a contract employs technical terms, a court shall interpret them as they are commonly understood by persons in the business or profession to which they relate, unless the terms are clearly used in a different sense. Cal. Civ. Code § 1645; *see Rosen v. State Farm Gen. Ins. Co.*, 30 Cal. 4th 1070, 1073, 70 P.3d 351, 353 (2003) (involving interpretation of "collapse" in insurance contract that explicitly defined the term).

---

*v. Associated Aviation Underwriters, Inc.*, 297 F. Supp. 2d 972 (W.D. Mich. 2004) (No. 02-192). Noting that "the only apparent connection which the state of Michigan has with this dispute is that it is a state in which [Meridian] was able to obtain personal jurisdiction over [AAU]," the District Court held that the law of California—the state in which the Policy was executed—governed the court's interpretation of the contract. *Meridian Leasing, Inc. v. Associated Aviation Underwriters, Inc.*, No. 02-192, slip op. at 7 (W.D. Mich. Feb. 14, 2003). Neither party disputes this ruling on appeal; therefore, we will assume that California law governs the interpretation of the Policy.

California has erected a low threshold for finding ambiguity in an insurance contract. "A policy provision is ambiguous when it can have two or more reasonable constructions." *Safeco*, 26 Cal. 4th at 763, 28 P.3d at 849; *see also Kilroy Indus. United Pac. Ins. Co.*, 608 F. Supp. 847, 852 (C.D. Cal. 1985) ("An insurance policy is ambiguous if the meaning of the terms is uncertain or capable of being understood in more than one manner.") (internal quotation marks omitted); *S. Cal. Edison Co. v. Superior Court*, 44 Cal. Rptr. 2d 227, 232 (Ct. App. 1995) (stating that the question for the court is whether the contract is "reasonably susceptible" to the meaning urged). Ambiguities must be resolved "in accordance with the objectively reasonable expectations of the insured." *Farmers Ins. Exch. v. Knopp*, 58 Cal. Rptr. 2d 331, 335 (Ct. App. 1996). This requirement comports with the statutory provision and longstanding rule of contract interpretation that ambiguities in a contract must be construed against the party who drafted their terms. Cal. Civ. Code § 1654; *Victoria v. Superior Court*, 40 Cal. 3d 734, 739, 710 P.2d 833, 835 (1985). In addition, coverage clauses are interpreted broadly and exclusions are interpreted narrowly. *Garvey v. State Farm Fire & Cas. Co.*, 48 Cal. 3d 395, 406, 770 P.2d 704, 710 (1989).

It is of course axiomatic that extrinsic evidence may be used to interpret a contract when the terms of the contract are in some respect ambiguous. *See, e.g.*, *Morey v. Vannucci*, 75 Cal. Rptr. 2d 573, 578 (Ct. App. 1998) (stating that California law *requires* admission of extrinsic evidence to resolve ambiguities). California's leading case on the use of extrinsic evidence in contract interpretation is *Pacific Gas and Electric Co. v. G.W. Thomas Drayage & Rigging Co.*, 69 Cal. 2d 33, 442 P.2d 641 (1968). In that case, Chief Justice Roger Traynor set forth a very permissive standard for the use of extrinsic evidence: "The test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible." *Id.* at 37, 442 P.2d at 644. Chief Justice Traynor continued: "A rule that would limit the determination of the meaning of a written instrument to its four-corners merely because it seems to the court to be clear and unambiguous, would either deny the relevance of the intention of the parties or presuppose a degree of verbal precision and stability our language has not attained." *Id.*

The *Pacific Gas* court noted that many other courts have held that a contract may be unambiguous on its face. *Id.* at 38 & n.4, 442 P.2d at 644 & n.4 (citing examples from the Second Circuit and Williston on Contracts). However, the California Supreme Court explicitly chose to depart from that authority.

> In this state, . . . the intention of the parties as expressed in the contract is the source of contractual rights and duties. A court must ascertain and give effect to this intention by determining what the parties meant by the words they used. Accordingly, the exclusion of relevant, extrinsic evidence to explain the meaning of a written instrument could be justified only if it were feasible to determine the meaning the parties gave to the words from the instrument alone.

*Id.* at 38, 442 P.2d at 664 (footnote omitted).

Subsequent decisions of other courts have criticized the breadth of the *Pacific Gas* holding. For instance, the Ninth Circuit made the following observation:

> California does not follow the traditional rule. Two decades ago the California Supreme Court in [*Pacific Gas*] turned its back on the notion that a contract can ever have a plain meaning discernible by a court without resort to extrinsic evidence. The court reasoned that contractual obligations flow not from the words of the contract, but from the intention of the parties.

*Trident Ctr. v. Conn. Gen. Life Ins. Co.*, 847 F.2d 564, 568–69 (9th Cir. 1988). The court continued:

> Under *Pacific Gas*, it matters not how clearly a contract is written, nor how completely it is integrated, nor how carefully it is negotiated, nor how squarely it addresses the issue before the court: the contract cannot be rendered impervious to attack by parol evidence. If one side is willing to claim that the parties intended one thing but the agreement provides for another, the court must consider extrinsic evidence of possible ambiguity. If that evidence raises the specter of ambiguity where there was none before, the contract language is displaced and the intention of the parties must be divined from self-serving testimony offered by partisan witnesses whose recollection is hazy from passage of time and colored by their conflicting interests.

*Id.* at 569.[3] Similarly, the Southern District of New York recognized that *Pacific Gas* represented a departure from the law of New York. *See Hanson v. McCaw Cellular Communications, Inc.*, 881 F. Supp. 911, 916–17 (S.D.N.Y. 1995) (noting that the California approach differs from the law of New York and has been "sharply criticized," but reluctantly applying the standard set forth in *Pacific Gas* in interpreting a license governed by California law); *see also Bowers v. Jefferson Pilot Fin. Ins. Co.*, 219 F.R.D. 578, 583–84 (E.D. Mich. 2004) (noting the variation among states regarding use of extrinsic evidence in contract interpretation, and citing *Pacific Gas*). We think that these authorities illustrate that California has adopted a comparatively expansive approach to contract interpretation.

Against this legal backdrop, we turn our inquiry to the specific language of the Policy. Like most insurance contracts, the Policy contains exclusions as well as coverages. The section of the Policy titled "Exclusions" provides as follows:

> This policy does not apply:
> . . . .
> (f) Under coverages F, G and H, to **physical damage**
> . . . .
> (ii) caused by and confined to (a) wear and tear, (b) deterioration or (c) mechanical or electrical breakdown or failure of equipment, components or accessories installed in the **aircraft** . . . .

J.A. at 158 (bold type in original). Two pages later, under the heading "Limit of the Company's Liability," the Policy states the following:

> With respect to damage to aircraft engines and auxiliary power units insured under this policy:
> . . . .
> (b) damage caused by heat which results from the operation, attempted operation or shutdown of the engine shall be considered to be "wear and tear" . . . .

J.A. at 160.

The District Court concluded, in its February 14, 2003 Opinion and again in its January 5, 2004 Opinion, that the Policy did not define the term "wear and tear." *Meridian Leasing I* at 10; *Meridian Leasing II*, 297 F. Supp. at 980–81. In reaching this conclusion, the court expressed

---

[3] We note that the *Trident* decision was itself criticized by a panel of the California Court of Appeals, which characterized the decision as an "unfortunate and, in our view, inaccurate characterization of California law." *Banco Do Brasil, S.A. v. Latian, Inc.*, 285 Cal. Rptr. 870, 893 n.53 (Ct. App. 1991).

reluctance to give broad construction to the limitation language, which, the court posited, would result in exclusion of coverage for *any* damage caused by heat. Had this been AAU's intention, the District Court noted, it could have explicitly stated so in the Policy. Instead, the court found, the Policy left the term "wear and tear" undefined, and the limitation had the effect of excluding "coverage for damage caused by heat which results from (or is properly characterized as) 'wear and tear.'" *Meridian Leasing I* at 10. Having identified an ambiguity, the District Court then consulted various on-line dictionaries for the "ordinary and popular" meaning of "wear and tear." As a result of this exercise, the court held that "wear and tear" does not encompass all damage, but only damage that results from "normal" or "ordinary" usage. *Id.* Accordingly, the District Court resolved the perceived ambiguity by interpreting the heat limitation as to require "normal" or "ordinary" operation or attempted operation of the engine. *Id.* at 11.

We take issue with one aspect of the District Court's ruling. By declaring that the Policy does not define wear and tear, and suggesting that the heat limitation excluded only heat damage that is properly characterized as wear and tear, we think that the District Court effectively rendered the heat limitation superfluous. If the Policy expressly excludes wear and tear, and the subsequent heat limitation applies only to damage that would otherwise be considered to be wear and tear, we fail to see what purpose the heat limitation would serve. The District Court's suggested reading of the heat limitation therefore runs afoul of the principle of California law requiring an interpreting court to give effect to every part of a contract if reasonably practicable to do so. *See* Cal. Civ. Code § 1641. We do not believe, however, that the District Court's reading of the heat limitation was necessary to its ultimate finding of ambiguity.

With respect to the District Court's broader holding that the Policy was ambiguous, we are in agreement. Our finding of ambiguity flows from the primary mandate of any court interpreting a contract under California law: to give effect to the mutual intent of the parties as it existed at the time of contracting. Cal. Civ. Code § 1636. To this end, a court must give terms their "ordinary and popular" meaning unless they are used in a technical sense or are given a special meaning by usage. *Id.* § 1644. An interpreting court may not focus on the perceived ambiguity of a term or expression in the abstract, but must interpret a policy holistically and in the context of the circumstances of the case. *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18, 900 P.2d 619, 627 (1995). "The proper question is whether the word is ambiguous in the context of *this* policy and the circumstances of *this* case. The provision will shift between clarity and ambiguity with changes in the event at hand." *Bay Cities Paving & Grading, Inc. v. Lawyer's Mut. Ins. Co.*, 5 Cal. 4th 854, 868, 855 P.2d 1263, 1271 (1993) (internal citations and quotation marks omitted).

Section 1644 of the California Civil Code was the focus of the California Supreme Court's recent decision in *E.M.M.I. Inc. v. Zurich American Insurance Co.*, 32 Cal. 4th 465, 84 P.3d 385 (2004), an insurance coverage dispute arising from the theft of a jewelry salesman's vehicle containing two bags of jewelry while the salesman was inspecting the vehicle's exhaust pipe. The salesman's employer had insured the jewelry under a so-called "jeweler's block" insurance policy, but the policy excluded from coverage any jewelry stolen from a vehicle except when the insured's representative was "actually in or upon the vehicle at the time of the theft." *Id.* at 469, 84 P.3d at 388. The insurer denied coverage on the theory that "actually in or upon" was a legal term of art that required strict construction and did not extend, as the insured had argued, to instances where the insured was merely in close proximity to the vehicle. California's Supreme Court rejected this argument, however, noting that "neither the phrase 'actually in or upon' nor the term 'upon' was enclosed in quotation marks." *Id.* at 471–72, 84 P.3d at 390. There was nothing in the policy, the court found, that indicated or suggested that the parties intended the exception to the vehicle theft exclusion to carry a specialized or technical meaning. *Id.* Accordingly, the court found that the term "upon" was ambiguous, and resolved the ambiguity in favor of the insured.

The instant case is closely analogous to *E.M.M.I.* Where the term "wear and tear" first appears in the Exclusions section of the Policy, there are no quotation marks to denote that the expression is a term of art or carries a specialized meaning. Whereas other terms in the exclusion, such as "physical damage" and "aircraft," appear in bold typeface to indicate that they are defined in the Definitions section of the Policy,[4] the term "wear and tear" appears in an undistinguished typeface. Indeed, "wear and tear" is nowhere defined in the Definitions section of the Policy, as one would expect it to be if AAU and Meridian had intended the term to convey a special meaning. Under these circumstances, we find nothing to indicate that the parties understood "wear and tear" to convey a meaning other than its ordinary and normal meaning.

We are likewise mindful of the type of insurance at issue here, which we believe sheds further light on the parties' mutual intent. All-risk insurance coverage, which Coverage F purports to provide, is a type of coverage that traditionally provides indemnification for "fortuitous and extraneous" events. *See* Andrew C. Hecker & M. Jane Goode, *Wear and Tear, Inherent Vice, Deterioration, etc.: The Multi-Faceted All-Risk Exclusions*, 21 Tort & Ins. L.J. 634, 634 (1986) [hereinafter "Hecker & Goode"]; *see also Kilroy Indus.*, 608 F. Supp. at 857 ("Under all-risk insurance policies, losses which are not fortuitous are not covered because the risk feature inherent in insurance is lacking."). "This so-called fortuity requirement was designed to assure that an insurer would not be required to reimburse its insured for certain and inevitable losses." Hecker & Goode at 635. Wear and tear exclusions have long been a feature of all-risk insurance contracts. *See id.* at 644 (noting that wear and tear has been "continually cited as one of the all-risk exclusions"); *see also Mellon v. Fed. Ins. Co.*, 14 F.2d 997, 1002 (D.C.N.Y. 1926) (involving an exclusion for wear and tear). Courts frequently interpret wear and tear exclusions to connote the popular meaning of the expression, and may imply adjectives such as "ordinary" and "natural" to limit the breadth of exclusions. *See, e.g.*, *Cyclops Corp. v. Home Ins. Co.*, 352 F. Supp. 931, 936 (W.D. Pa. 1973) ("We do not find that the modifiers 'ordinary' or 'natural' add anything to the commonly understood meaning of 'wear and tear.' . . . We find the use of the modifiers 'natural' or 'ordinary' to be a typical lawyer's redundancy.").

Under all-risk insurance policies covering machinery, coverage typically extends to damage caused by "accidents." Hecker & Goode at 644. The requirement of an accident is substantially equivalent to the fortuity requirement. *Id.* Hence, in the instant Policy, where Coverage F insures against "any physical damage loss to the aircraft," J.A. at 157, "physical damage" is expressly defined as "direct and *accidental* physical loss of or damage to the aircraft," J.A. at 161 (emphasis added). Stated another way, the express purpose of Coverage F of the Policy is to indemnify against accidental damage to the Aircraft.

Where an insurance policy employs broad coverage language, California law demands that the exclusionary language be exacting.

> [A]n insurer cannot escape its basic duty to insure by means of an exclusionary clause that is unclear. As we have declared time and again[,] any exception to the performance of the basic underlying obligation must be so stated as clearly to apprise the insured of its effect. Thus, the burden rests upon the insurer to phrase exceptions and exclusions in clear and unmistakable language. The exclusionary clause must be conspicuous, plain and clear. This rule applies with particular force when the coverage portion of the insurance policy would lead an insured to reasonably expect coverage for the claim purportedly excluded.

---

[4] The Definitions section of the Policy makes clear that special meaning attaches to terms in the Policy that appear in bold typeface.

*MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 648, 73 P.3d 1205, 1213 (2003) (internal citations and quotation marks omitted). Thus, in *E.M.M.I.*, the California Supreme Court took particular note of the fact that under a jeweler's block insurance policy, "all risks of loss or damage to jewelry may be insured, subject to certain exceptions." *E.M.M.I.*, 32 Cal. 4th at 469–70, 84 P.3d 385, 388–89.

The jeweler's block insurance policy in *E.M.M.I.*, we think, is closely analogous to the all-risk insurance policy here. Both policies broadly purport to cover all risks of loss not expressly excluded. It is therefore of critical importance that AAU express its exclusions with a clarity that will leave no doubt in the mind of the insured as to the types of occurrences that are not afforded coverage. But where, as here, a policy broadly purports to indemnify against accidental damage to an aircraft, excluding damage caused by wear and tear, and gives no indication that wear and tear carries a specialized meaning that encompasses the type of unusual incident that occurred here, we think that California law requires a construction consistent with the reasonable expectations of the insured. *See Safeco*, 26 Cal. 4th at 763, 28 P.3d at 849. To this end, we do not believe that Meridian reasonably would have expected the wear and tear exclusion to preclude coverage for the damage that occurred on August 10, 2001, particularly given the District Court's finding that the damage did not result from the "normal" or "ordinary" operation of the aircraft. *Meridian Leasing II*, 297 F. Supp. at 982–83.

Furthermore, AAU was on notice that its wear and tear exclusion was susceptible to an interpretation requiring ordinary or normal operation of the engine. In *Carlson Cos. v. Associated Aviation Underwriters*, No. 89-819, 1989 WL 124372 (Minn. Ct. App. Oct. 24, 1989), an unreported case involving precisely the same Policy language under consideration here, the Minnesota Court of Appeals found ambiguity in the term "wear and tear" and interpreted the term in accordance with its common usage. Although that decision is nonprecedential under Minnesota law, we nevertheless find *Carlson* to be probative of the fact that AAU knew at the time of contracting with Meridian that the limitation language of the Policy was ambiguous.

AAU relies upon *Arawak Aviation, Inc. v. Indemnity Insurance Co.*, 285 F.3d 954 (11th Cir. 2002), a case that involved an airplane engine on which the pilot neglected to secure the oil cap properly before flight. The subsequent loss of oil caused excessive heat, which damaged the engine. Like the instant case, *Arawak* involved a wear and tear provision that excluded from the scope of coverage "damage caused by heat that results from the operation, attempted operation, or shutdown of the engine." *Id.* at 956. On appeal to the Eleventh Circuit, the insured argued that the words "caused by" were ambiguous because they could be interpreted to admit of the possibility that the pilot's negligence was the efficient cause of the damage. In light of the possibility that the damage was "caused by" the pilot's negligence, the appellant argued, Florida law compelled the Eleventh Circuit to construe the ambiguity in favor of the insured. The Eleventh Circuit acknowledged that it must first determine whether the specific policy language was ambiguous before considering whether Florida law permitted application of the efficient-cause doctrine. *Id.* The court found no ambiguity, however, because application of the efficient-cause doctrine to the policy would create a perverse incentive for policyholders to forgo proper maintenance of their aircraft in order to ensure maximum insurance coverage. *Id.* In the face of such a result, the court concluded that the only reasonable interpretation of the exclusionary language was a narrow reading.

The *Arawak* case is distinguishable in several important respects. Looking beyond the simple fact that *Arawak* involved Florida law, rather than California law, the *Arawak* court was concerned with whether the insured's reading of "caused by" yielded an interpretation to which the contract was susceptible. Unlike the instant case, the insured in *Arawak* never argued that the damage sustained was not wear and tear. Instead, the insured argued that the damage to the engine was not "caused by" heat, but rather, by the pilot's negligence. Thus, *Arawak* was not, as here, a dispute over the proper characterization of damage under the terms of an insurance policy.

Even if the Eleventh Circuit had reached the question whether "wear and tear" was ambiguous, we think it would have encountered a materially distinct set of circumstances. In *Arawak*, the insurance policy contained two relevant exclusionary clauses. The first clause stated, in relevant part, the following: "*Wear and tear.* We will not cover wear and tear or depreciation." *Id.* at 956. The second clause went on to state, in relevant part, as follows: "*Wear and tear to engines.* We will not cover the following types of damage to your aircraft's engines or auxiliary power units: damage caused by heat that results from the operation, attempted operation, or shutdown of the engine." *Id.* The second exclusionary clause stands on its own. A court need only determine that damage was caused by heat to find that coverage was properly denied. By contrast, the Policy in the instant case casts the heat limitation as a subset of wear and tear when it states that "damage caused by heat which results from the operation, attempted operation or shutdown of the engine shall be considered to be 'wear and tear.'" J.A. at 160. In this manner, AAU's Policy shifts the inquiry back to the exclusion for wear and tear. As we have already noted, the Policy does not indicate with a sufficient degree of precision that the term "wear and tear" is meant to carry a specialized meaning. We therefore find that the *Arawak* policy's use of self-contained, independent exclusionary clauses achieves a degree of precision lacking in the instant case.

### III.

Accordingly, we find a lack of evidence that the parties intended "wear and tear" to carry a specialized meaning, coupled with significant circumstantial evidence tending to show that the parties never intended the wear and tear provisions of the Policy to exclude coverage for the type of event that occurred on August 10, 2001. Under the circumstances of this case, we hold that the District Court did not err in finding the language of the Policy to be ambiguous with respect to the scope of coverage afforded and construing the ambiguity in favor of the objectively reasonable expectations of Meridian. The interpretation advocated by AAU stretches "wear and tear" beyond any semblance of its ordinary meaning and is at odds with the requirement that exclusions must be interpreted narrowly. Such a broad interpretation would overlook evidence that the parties never intended to give "wear and tear" a special meaning and would be contrary to the traditional purpose of all-risk insurance. By interpreting the limitation so as to require "ordinary" or "normal" operation or attempted operation of the engine, the District Court followed established precedent in interpreting wear and tear exclusions. *See Cyclops Corp.*, 352 F. Supp. at 936.

Our holding is also in keeping with the requirement of California law that we interpret the Policy as a whole, giving effect to every part of the contract. Cal. Civ. Code § 1641. We do not believe that requiring the wear and tear to result from the ordinary and normal operation of the engine renders the heat limitation superfluous. An interpretation requiring ordinary and normal engine operation leaves intact the heat limitation because the Policy's limiting language captures damage from heat generated through normal operation of the engine, which one might not ordinarily consider to be wear and tear.

For the foregoing reasons, the District Court's finding of ambiguity in the terms of the Policy and resolution of that ambiguity by requiring wear and tear to result from the ordinary and normal operation of an aircraft engine is hereby AFFIRMED.