[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 23-12611

Non-Argument Calendar

————————————————

GEICO MARINE INSURANCE COMPANY,

Plaintiff-Counter Defendant-Appellee,

*versus*

TERRY W. MILLER,
ERICKA J. MILLER,

Defendants-Counter Claimants-Appellants.

————————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 5:22-cv-00296-JSM-PRL

_____

Before LUCK, BRASHER, and ABUDU, Circuit Judges.

PER CURIAM:

This is a maritime insurance contract case. Geico Marine Insurance Company sued Terry and Ericka Miller, seeking a declaratory judgment that its maritime insurance contract on the Millers' yacht did not cover damage the yacht suffered when it failed during a sea test. The Millers countersued for breach of contract. Resolving cross motions for summary judgment, the district court found for Geico, determining that (1) the loss was excluded by the contract's exclusion for losses caused by mechanical failure and (2) the record lacked evidence of a latent defect. After careful review, we conclude there is a genuine dispute of material fact as to the existence of a latent defect, so we reverse the district court and remand for further proceedings.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Millers owned a 2002 Viking Yacht Cruiser. Geico insured the boat. Under the terms of the maritime insurance contract, Geico promised to "pay for sudden, direct and accidental property damage, including theft or vandalism, to [the] insured's boat and its dinghy." But the policy had a mechanical breakdown exclusion that excluded from coverage "any loss, damage or expense caused directly or indirectly by . . . mechanical breakdown, electrical breakdown, structural breakdown, overheating or galvanic action." That exclusion explained, however, that it "does not

apply to immediate consequential property damage resulting from fire, explosion, sinking, demasting, collision or stranding." A separate latent defect exclusion explained that "[c]overage w[ould] not apply to . . . [t]he cost to repair or replace a part that fail[ed] as a result of a design, manufacturing or latent defect." But that exclusion was limited by an exception that explained Geico would "cover immediate consequential property damage that results from such failure."

In November 2021, the Millers' yacht underwent a sea trial. Leonardo Avila, the Millers' marine mechanic, was aboard the ship. During the sea trial, the starboard engine made an abnormal noise, and that engine was shut down.

The next day, Avila disassembled the failed engine, and he determined that it had suffered a connecting rod bearing failure on either the A5 or B5 bearings, which resulted in other damage to the engine. The bearings appeared to have "spun" and had visible damage. The bearing rod failure resulted in damage to the journal of the crankshaft and the scattering of metal debris throughout the engine. Avila's inspection of the failed engine revealed its components had metal contamination.

All in all, Avila concluded that the first step in the engine's failure was when the A5 and B5 connecting rod bearings stopped working properly. To him, this was the "primary cause" of the failure—attributing scattered debris as a "secondary failure." Avila noted that the connecting rod bearings' failure was a mechanical failure. Avila was unable to determine the cause of the bearing

failure, but he did not see anything in the starboard engine to indicate that the bearing failure was caused by lack of maintenance, lubrication, wear, tear, or corrosion.

The Millers filed a claim with Geico, which it denied. About six months later, Geico sued the Millers, seeking a declaratory judgment that the damage they claimed was not covered by the policy. The Millers answered and counterclaimed for breach of contract.

The case proceeded to discovery where the Millers deposed Geico's corporate representative, Kerry McCook. McCook testified that Geico doesn't have a specific latent defect definition, and that it follows the dictionary definition of a term when the policy doesn't define it. Geico doesn't follow a specific dictionary, so where there are conflicting definitions of an undefined term, it uses the one most favorable to an insured. He indicated that Geico agreed with Merriam-Webster's definition of "latent defect" as "a defect as in a product or property that is not discoverable by reasonable or customary inspection."

As to the cause of the engine failure, McCook conceded that manufacturing defects can cause a mechanical breakdown. And he also admitted that GEICO was not aware of any "obvious," non-"onerous," "reasonable," or "customary" inspection that could have determined that the bearings would have failed before they did.

Based on a report made by Dr. Lee Swanger, an expert for both the Millers and Geico, McCook testified that the "most likely cause" of the rod bearing failure, as outlined by Dr. Swanger, was

having debris on the bearing surface or the bearing back, and that Geico "would agree that that issue would be latent." He "disagree[d]" that the bearing failure itself was latent, but he admitted that Dr. Swanger's report revealed "there was a latent . . . defect or issue with the bearings." McCook stated that, "[b]ased on Dr. Swanger's report, Geico agree[d] that there was a latent issue with the bearings that caused the mechanical breakdown." "Based on [his] knowledge of the dictionary definition of defect," McCook "agree[d]" that "latent issue is just another word for latent defect." And McCook admitted that Dr. Swanger's reports indicated "there could have been debris on the bearing surface or bearing back or a slight out-of-position location of one or more of the bearing shells" and that "[b]ased on our agreed definition of latent, those conditions would be latent, as no reasonable inspection would have been able to uncover that."

The parties filed cross motions for summary judgment. The district court granted Geico's motion and denied the Millers' motion, concluding that "the record lacks evidence of a latent defect," so the exception to the latent defect exclusion wouldn't apply, and that the "loss is excluded by the policy's mechanical breakdown exclusion." The district court determined McCook's testimony didn't provide evidence of a latent defect because it was "entirely speculative" and he "wasn't qualified to testify about any alleged defect," so there was "no competent evidence of a latent defect."

The Millers appeal the summary judgment for Geico.

**STANDARD OF REVIEW**

We review de novo the district court's grant of summary judgment. *Mata Chorwadi, Inc. v. City of Boynton Beach*, 66 F.4th 1259, 1263 (11th Cir. 2023). We also review de novo the interpretation of marine insurance contracts. *Geico Marine Ins. Co. v. Shackleford*, 945 F.3d 1135, 1139 (11th Cir. 2019).

**DISCUSSION**

The Millers' appeal raises two issues for us to decide: (1) Was there a genuine dispute of material fact as to the existence of a latent defect? (2) And if so, does the exclusion for losses from mechanical breakdowns preclude recovery?[1]

As to the first issue—whether there was a genuine dispute of material fact as to the existence of a latent defect—the Millers argue that McCook's testimony created a genuine issue. McCook testified that the "most likely cause" of the rod bearings' failure, as outlined by Dr. Swanger, was having debris on the bearing surface or the bearing back, which Geico agreed "would be latent." He also testified that "[b]ased on Dr. Swanger's report, Geico agrees

---

[1] "Marine insurance contracts"—like the one at issue here—"qualify as maritime contracts, which fall within the admiralty jurisdiction of the federal courts and are governed by maritime law." *Id.* (citations omitted). "In the absence of a 'judicially established federal admiralty rule,' we rely on state law when addressing questions of marine insurance." *Id.* (quoting *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 314 (1955)). Here, both parties acknowledge that Florida law supplements the applicable federal admiralty law.

that there was a latent issue with the bearings that caused the mechanical breakdown." And "[b]ased on [his] knowledge of the dictionary definition of defect," McCook said "I would agree," when asked if "latent defect" meant "latent issue."

We agree with the Millers that the district court erred in concluding there was no genuine dispute as to a latent defect based on McCook's testimony. The district court determined that this testimony was "entirely speculative," and now Geico argues that this would have been an improper opinion by a lay witness in violation of Federal Rule of Evidence 702's expert requirements. Of course, "[s]peculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (cleaned up). But McCook, Geico's corporate representative, was not speculating about the cause of the mechanical failure and he was not giving a lay opinion. McCook, as Geico's rule 30(b)(6) designee, gave Geico's position on the cause of the rod bearing failure based on the expert report Geico and the Millers commissioned from Dr. Swanger. Based on the expert report, "Geico agree[d] that there was a latent issue with the bearings that caused the mechanical breakdown."

As to the second issue, we must determine whether coverage for a latent defect exists despite the mechanical breakdown exclusion. Geico says no, claiming that the mechanical breakdown was the efficient cause such that there is no coverage. We disagree.

In reaching that conclusion, we are mindful that "[w]e must interpret the policy's terms 'in accordance with the plain language of the policies as bargained for by the parties.'" *Travelers Indem. Co. of Conn. v. Richard Mckenzie & Sons, Inc.*, 10 F.4th 1255, 1264 (11th Cir. 2021) (quoting *Prudential Prop. & Cas. Ins. Co. v. Swindal*, 622 So. 2d 467, 470 (Fla. 1993)).  In addition, "we are required to abide by the Florida rule that 'exceptions to coverage in an insurance policy are strictly construed against the insurer and any doubt or ambiguity is resolved in favor of the insured.'" *Arawak Aviation, Inc. v. Indem. Ins. Co. of N. Am.*, 285 F.3d 954, 956 (11th Cir. 2002) (cleaned up) (quoting *Hartford Accident & Indem. Co. v. Phelps*, 294 So. 2d 362, 364 (Fla. Dist. Ct. App. 1974)).  But we do so "only when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction." *Id.* (cleaned up) (quoting *State Farm Mut. Auto. Ins. Co. v. Pridgen*, 498 So. 2d 1245, 1248 (Fla.1986)).

With those background interpretative principles in mind, we consider Geico's argument that the exclusion for consequential property damage based on mechanical breakdown trumps the coverage permitted under the exception to the latent defect exclusion for immediate consequential property damage.  True, as Geico points out in its brief, the Florida Supreme Court has long said that "an exclusion does not provide coverage but limits coverage." *La-Marche v. Shelby Mut. Ins. Co.*, 390 So. 2d 325, 326 (Fla. 1980).[2]  But

---

[2] The Millers argue that this latent defect exclusion provision is really an Inchmaree clause, which has a "rich history" and "purpose . . . to broaden, not

23-12611                Opinion of the Court                9

the Florida Supreme Court has also explained that "[a]lthough exclusionary clauses cannot be relied upon to create coverage, principles governing the construction of insurance contracts dictate that when construing an insurance policy to determine coverage the pertinent provisions should be read *in pari materia*." *U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So. 2d 871, 877 (Fla. 2007) (quoting *State Farm Fire & Cas. Co. v. CTC Dev. Corp.*, 720 So. 2d 1072, 1074–75 (Fla. 1998)).

When looking at the relevant coverage and exclusion provisions of the contract, as the parties both correctly point out, the question is whether the mechanical breakdown or the latent defect was the proximate cause of the damage. "[T]he proximate cause is the efficient cause and not a merely incidental cause which may be nearer in time to the result." *Lanasa Fruit S.S. & Importing Co. v. Universal Ins. Co.*, 302 U.S. 556, 562 (1938). Put another way, courts must determine the "predominate and determining cause." *Standard Oil Co. of N.J. v. United States*, 340 U.S. 54, 57–59 (1950) (cleaned up). This means "[c]ourts analyzing problems of marine insurance causation have, as a rule, applied strictly the doctrine of *causa*

---

restrict, to expand, not withdraw, coverage" in maritime cases. *Saskatchewan Gov't Ins. Off. v. Spot Pack, Inc.*, 242 F.2d 385, 391 (5th Cir. 1957). But this provision is clearly within the "exclusions" provisions within the "coverages" section of the contract, and that part in the contract here saying there is coverage is an *exception* to the exclusion. *Cf. id.* at 391 n.5 (featuring an Inchmaree clause that provided, "[t]his insurance also specially to cover . . . loss of or damage to the subject matter insured directly caused by the following: . . . any latent defect in the machinery or hull[] (excluding the cost and expense of replacing or repairing the defective part)").

*proxima non remota spectatur* ('the immediate not the remote cause is considered')." *Tillery v. Hull & Co.*, 876 F.2d 1517, 1519 (11th Cir. 1989). In other words, "courts seeking to determine the cause of a vessel's damage assign greater weight to the ultimate, efficient causes than to the temporally remote causes." *Id.*

Florida's precedent is instructive on this point. Under Florida's efficient proximate cause doctrine, "where there is a concurrence of different perils, the efficient cause—the one that set the other in motion—is the cause to which the loss is attributable." *Sebo v. Am. Home Assurance Co.*, 208 So. 3d 694, 697 (Fla. 2016) (citing *Fire Ass'n of Phila. v. Evansville Brewing Ass'n*, 75 So. 196 (Fla. 1917); additional citation omitted)). For instance, "[i]n *Evansville Brewing*, [the Florida Supreme Court] contemplated a chain of events where one peril directly led to a subsequent peril," and "[i]n finding that coverage existed under the policy, [it] drew the distinction between a covered peril setting into motion an uncovered peril and an uncovered peril setting into motion a covered peril," holding that "[c]overage exists for the former but not the latter." *Id.* (citing *Evansville Brewing*, 75 So. at 198).

Here, there's evidence from which a reasonable jury could conclude that the latent defect was the efficient cause of the engine failure. McCook testified that the "most likely cause" of the bearing rod failure was "having debris on the bearing surface or the bearing back among other things," and he admitted Geico "would agree that that issue would be latent, yes." Sure, he "disagree[d]" that the bearing failure itself was latent, but he admitted that

Dr. Swanger's report revealed "there was a latent . . . defect or issue with the bearings." McCook made perfectly clear that, "[b]ased on Dr. Swanger's report, Geico agrees that there was a latent issue with the bearings that caused the mechanical breakdown." That's evidence that a latent defect caused the mechanical breakdown. And although Avila was unable to determine what the cause of the bearing failure was, he did not see anything in the starboard engine to indicate that the bearing failure was caused by lack of maintenance, lubrication, wear, tear, or corrosion—which means his testimony is consistent with the possibility of a latent defect too. In other words, the record testimony provides evidence of a genuine dispute of material fact that a latent defect was the "predominate and determining" or "efficient cause" of the failure. *See Standard Oil*, 340 U.S. at 57–59.

Geico invokes two cases involving engine failure that it argues undermine this conclusion. Neither help it. The first case is *Little Judy Industries, Inc. v. Federal Insurance Co.*, 280 So. 2d 14 (Fla. Dist. Ct. App. 1973). In *Little Judy*, the trial court concluded that an exclusion for mechanical breakdown applied—despite exception language saying the exclusion applied "unless such damage resulted from other damage covered by this [all-risk] policy"—even though the mechanical failure was "traceable to negligence in its repair or to improper repair or assembly of the engine." *Id.* at 14–15. The state appellate court affirmed, holding that "[t]he fact that the failure . . . was traceable to negligence in its repair or to improper repair or assembly of the engine did not make it other than a mechanical failure. In a great many, if not most instances the

mechanical failure of an engine could be attributed to some . . . improper or negligent work." *Id.* at 15.

The second case Geico cites is our decision in *Arawak Aviation*. Relying on *Little Judy*, we concluded that a "wear and tear" exclusion that excluded "damage caused by heat that results from the operation . . . of the engine" should not be read to include an efficient cause doctrine such that coverage would apply based on the "damage to the aircraft [being] ultimately 'caused by' the negligence of the pilot." *Arawak Aviation*, 285 F.3d at 956–59 (citing *Little Judy*, 280 So. 2d at 15). We explained that "[i]f we read the efficient cause doctrine into the phrase, 'caused by,' in the exclusionary clauses of the [insurance] policy, we would make those very same clauses pointless, because . . . negligence (a covered cause of damage) is almost always the efficient cause of 'wear and tear' (an excluded cause of damage)." *Id.* at 958.

We noted efficient cause cases under Florida law "involved situations in which the efficient cause of the damage was not a necessary antecedent of the damage's direct cause." *Id.* We cited *Evansville Brewing* as an example of where the efficient cause doctrine applied. *Id.* (citing 75 So. at 198). In *Evansville Brewing*, we explained, "the Florida Supreme Court considered whether a policy, which insured against fire damage but not against explosion damage, would cover a building that was destroyed by an explosion caused by fire." *Id.* "Because fire is not the essential cause of every explosion, the court was able to look at these two factors separately and determine which one was the efficient cause of the damage—

23-12611                Opinion of the Court                13

without eviscerating the policy's provisions excluding coverage for explosion damage." *Id.* But because we concluded that applying the efficient cause doctrine to negligence as the earlier cause in *Arawak Aviation* would eviscerate a wear and tear exclusion, we concluded an efficiency cause reading did not apply to the contract at issue there. *Id.* at 958–59.

Unlike in *Little Judy* and in *Arawak Aviation*, we are not faced with negligence as the asserted efficient cause here. Our case is much more like the example from *Evansville Brewing* we outlined in *Arawak Aviation*: a latent, manufacturing, or design defect is not "almost always the efficient cause" of mechanical breakdown like we held negligence to be for wear and tear in *Arawak Aviation*. *See* 285 F.3d at 958. Nor is it "[i]n a great many, if not most instances" that mechanical breakdown is caused by a latent, manufacturing, or design defect—like the court in *Little Judy* found negligence to be. *See* 280 So. 2d at 15. So those negligence-based cases don't alter the proximate cause inquiry here. And they certainly don't change the genuine dispute of material fact as to the latent defect being the efficient cause of the engine failure.

## CONCLUSION

In short, we conclude that the district court erred in granting summary judgment because there is a genuine dispute of material fact as to latent defect and as to that latent defect being the efficient cause of mechanical breakdown. We therefore vacate the summary judgment for Geico and remand for further proceedings consistent with this opinion.

14                    Opinion of the Court                    23-12611

**VACATED AND REMANDED**.