NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0165n.06

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Feb 28, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| GERKEN PAVING INC., | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| LASALLE GROUP INC., | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellee. | ) | |

Before: BATCHELDER, Chief Judge; COOK and O'MALLEY[*], Circuit Judges

O'MALLEY, Circuit Judge. This is a dispute arising out of a construction contract. Gerken Paving Inc. ("Gerken") appeals the district court's order granting summary judgment and awarding attorneys' fees to LaSalle Group Inc. ("LaSalle"). The district court found Gerken not entitled to additional payment based on asphalt overages during paving because it failed to submit a written request in accordance with the contract governing that work. It also denied Gerken funds withheld by LaSalle as retainage based on Gerken's failure to pave an outlot and complete certain punchlist items. Subsequently, the district court awarded the remainder of the retainage as attorneys' fees in accordance with the parties' contract. For the reasons provided below, we *affirm* the district court's grant of summary judgment regarding the asphalt overages, the retainage, and the award of attorneys' fees.

_____

[*]The Honorable Kathleen M. O'Malley, Circuit Judge for the United States Court of Appeals for the Federal Circuit, sitting by designation.

## I. Background

### A. The LaSalle-Gerken Contract

LaSalle, a Michigan general contractor, entered into a contract with non-party Menard, Inc. ("Owner") to build a home improvement store in Oregon, Ohio. On July 18, 2007, LaSalle entered into a fixed price subcontract ("Project") with Gerken, an Ohio paving company, to pave the access roads and parking lots for the Project, including an outlot on Curtis Road, and to complete the items on a punchlist. In return, LaSalle agreed to pay Gerken a fixed price of $545,705.00. The contract required Gerken to pave in accordance with Ohio Department of Transportation ("ODOT") guidelines, which set a minimum air temperature for paving of 40 °F. According to the contract, a non-party would complete the preliminary grading work by October 26, 2007. Then, Gerken would need to finish all asphalt paving by November 16, 2007, and the entire Project no later than December 3, 2007. The contract also required Gerken to provide a two year warranty on all completed work.

The contract included provisions governing Project changes. Section 5.2 provided that "[u]nless otherwise directed by [LaSalle] in writing, any increase or decrease in [Contract] price and time of performance resulting from changes shall be agreed upon *in writing* by the parties hereto *in advance of* performance of the work." (emphasis added). Section 5.4 required that "[a]ny claim for an increase in the Subcontract price . . . based upon Contractor's written or verbal order, . . . must be made by Subcontractor to Contractor, *in writing*, within five (5) working days . . . [or] in any event *prior to starting work* involved in the claim; otherwise, the claim shall be barred. All such written claims must furnish full details and supporting documentation." (emphasis added). Section 5.5 provided that "[Gerken] shall not be entitled to any increase in the [Contract] price . . . unless the amount of any such increase . . . has been

2

agreed upon in writing, accepted by Owner . . . and as a condition precedent, paid by Owner to [LaSalle]." And, Section 5.6 included a provision regarding requests by LaSalle or the Owner for "extra work" beyond the contract.

The contract further allowed LaSalle to withhold payments to Gerken if Gerken breached any provision of the contract or if LaSalle had a reasonable doubt about whether Gerken could complete the work in a timely and proper manner.[1] If LaSalle retained any payments, it was authorized to use the retained money to pay for the unfinished work. The contract also included a provision that shifted attorneys' fees to Gerken if any dispute over the contract resulted in a decision in favor of LaSalle, either in whole or in part.

### B. Contract Performance

While the contract required third-party contractors to complete all preliminary grading work by October 26, 2007, none of that work was completed until mid-November and it was not fully complete until November 28. Neither Gerken nor LaSalle caused that delay. The grading delay prevented Gerken from doing any paving until November 12, 2007, over two weeks after the projected start date for that work. Gerken paved the portions of the lot which were graded on November 12, 13, and 14. It did so in above 40 °F weather, as required by the ODOT guidelines. During these three days, Gerken exceeded the amount of asphalt it had projected by over four hundred tons.

---

[1]Section 2.4 states that "[p]rogress payments and final payment may be withheld in whole or in part by [LaSalle] on account of: . . . (c) any breach by [Gerken] of any provision of this Subcontract . . . [or] (f) a reasonable doubt that [Gerken], for any reason, is able to timely and properly complete the Subcontract work[.] . . . If the said causes are not so remedied . . . [LaSalle] may remedy the same for [Gerken's] account and charge the entire cost thereof to [Gerken]."

3

Once the grading was completed, Gerken prepared to resume paving on November 28, 2007. On November 27, the weather report predicted that it would be colder than 40 °F on November 28. In response to the sub-40 °F weather report, Gerken asked LaSalle to sign a letter acknowledging that Gerken would not warranty the paving performed in sub-40 °F on November 28. LaSalle agreed. LaSalle signed similar statements on November 29 and 30, and December 2, 5, 12, 14, and 15. There was no mention of the need to use additional asphalt for the paving work in any of those letters.

On November 29, 2007, LaSalle approved two written field directives authorizing an increase in the contract price "to install additional base paving material at the board shead [sic] area whitch [sic] is from the catch basin line to 13 feet from the board shed" due to "Hidden Conditions." The first field directive increased the subcontract price on a "time and materials" basis not to exceed $2,000. Later that day, LaSalle approved a second written field directive increasing the amount of the first directive to $4,000. Though LaSalle did not execute any written field directives during the Project regarding the use of additional asphalt, Gerken claims that LaSalle employees verbally instructed Gerken to continue paving and promised payment for asphalt overages.

On December 15, 2007, Gerken finished paving the main area of the Project. Between November 29 and December 15, Gerken used more asphalt than projected every day. During this period, Gerken accrued $94,848.68 in total asphalt overages ($57,916.76 in leveling overages and $36,931.92 in surface overages). Gerken claims that its employees provided LaSalle with a written calculation of the asphalt overages after each day of paving.

Although Gerken completed paving the main site, it did not pave the Curtis Road outlot because the local municipality, the city of Northwood, shut down the worksite due to inclement

weather. On December 20, 2007, Gerken wrote a letter to LaSalle explaining that it had used significantly more asphalt to complete the job than expected. The letter contained prices for the additional asphalt used, but Gerken did not expressly ask LaSalle to pay for the overages. On March 3, 2008, Gerken submitted a payment application to LaSalle for the additional $94,848.68. On March 26, 2008, LaSalle responded to Gerken, refusing to pay for the asphalt overages because the parties had a fixed-price contract.

In Spring 2008, LaSalle demanded that Gerken pave the outlot and fix certain punchlist items. On May 23, 2008, Gerken responded that it would not pave the outlot unless LaSalle agreed to a $7,442.00 price increase because the cost of petroleum had increased in the interim months. Then, on June 3, 2008, Gerken sent LaSalle a detailed day-by-day description of the asphalt overages Gerken incurred on the Project, and asked LaSalle to pay for the overages. On June 12, 2008, LaSalle sent an email informing Gerken that, if Gerken did not pave the outlot by the following Monday, LaSalle would pave it at Gerken's expense. Gerken did not pave the outlot. LaSalle also demanded that Gerken fix the items on a punchlist, such as filling in low spots and cracks in the asphalt in the areas Gerken had paved. Gerken responded that it would not fix the items on the punchlist because LaSalle waived the warranty for that work. Based on Gerken's refusal to pave the outlot and complete the punchlist items, LaSalle retained the final ten percent of the fixed-price contract value, claiming it was authorized to do so under the contract. By this point, LaSalle had already paid Gerken $491,134.50. LaSalle employed a third party to pave the outlot for $20,000 and complete the punchlist items for $4,880.[2]

---

[2] The district court states that "LaSalle stated it had a third party pave the outlot at a cost of $24,880.00." It appears, however, that LaSalle paid $20,000 to pave the outlot and that LaSalle paid between $4,000 and $4,880 to complete the punchlist items.

**C. Procedural Background**

On April 28, 2011, Gerken filed a First Amended Complaint against LaSalle seeking payment for the asphalt overages and the withheld retainage. First Amended Complaint and Jury Demand, *Gerken Paving Inc. v. LaSalle Grp. Inc.*, No. 10-cv-14905 (E.D. Mich. Apr. 28, 2011), ECF No. 8. On April 30, 2012, LaSalle moved for summary judgment claiming that Gerken's failure to comply with the provisions in Section 5 of the contract barred its claims for the asphalt overages and that LaSalle was entitled to the retainage because Gerken failed to complete the final phase of the Project. Mot. Summ. J., *Gerken Paving Inc. v. LaSalle Grp. Inc.*, No. 10-cv-14905 (E.D. Mich. Apr. 30, 2012), ECF No. 22. On July 30, 2012, the district court granted LaSalle's motion for summary judgment, and dismissed Gerken's complaint in its entirety. *Gerken Paving Inc. v. LaSalle Grp. Inc.*, No. 10-cv-14905, 2012 WL 3079249, at \*1 (E.D. Mich. July 30, 2012). The district court found that the contract unambiguously required that all changes be requested and agreed to in writing. *Id.* at \*6. Specifically, the district court found that: (1) Section 5.6 did not waive Section 5.4's requirement to submit claims for an increase in the contract price in writing; (2) Gerken failed to meet the writing requirement with respect to any asphalt overages; (3) this failure was notable given Gerken's compliance with the requirements of Section 5 when seeking a waiver of warranty from LaSalle for work in below 40 °F conditions. *Id.* at \*6-7. For these reasons, the district court found that Gerken was not entitled to compensation for the asphalt overages. *Id.* In addressing the retainage issue, the district court noted that LaSalle acknowledged that it owed Gerken the portion of the retainage that exceeds the cost of paving the outlot and repairing the punch list items. *Id.*

On September 25, 2012, the district court denied Gerken's motion to vacate, alter, or amend the judgment, and granted LaSalle's motion for attorneys' fees. Order, *Gerken Paving*

*Inc. v. LaSalle Grp. Inc.*, No. 10-cv-14905 (E.D. Mich. Sept. 25, 2012), ECF No. 38. The district court denied Gerken's motion to vacate, alter, or amend the judgment as an untimely motion for reconsideration. *Id.* at 2. It found that Gerken failed to demonstrate any defect in the court's reasoning that would lead to a different result. *Id.* The district court then granted LaSalle's motion for attorneys' fees, finding LaSalle entitled to attorneys' fees under Section 13.4 of the Subcontract because LaSalle was the prevailing party in their dispute. *Id.* While LaSalle's attorneys' fees amounted to $48,827.00, LaSalle only requested the balance of the retainage kept by LaSalle, which LaSalle calculated as $27,219.55. *Id.* at 3. The district court granted LaSalle this reduced amount. *Id*. In reaching this conclusion, it rejected Gerken's arguments that the fee provision was void as a penalty clause. *Id.* at 2. It also found Gerken's arguments regarding the unreasonableness of the fees unpersuasive. *Id.* at 2-3. In support, the district court noted that the Defendant "demonstrated the reasonableness of the fees and its compliance with [the *Smith* factors]." *Id.* at 3. It also found that the "Defendant demonstrated its diligence in reporting hours and provided evidence that the hourly rates charged compare with[in] the prevailing rates with the community for similar services." *Id.* Based on the reduced fee to which LaSalle agreed, the court calculated the effective hourly rate at approximately $104.00 per hour, which it characterized as a "reasonable fee." *Id.* Ultimately, the court granted LaSalle the remainder of the retainage it requested, $27,219.55. *Id*.

Gerken appeals the district court's dismissal of its claims on summary judgment and the grant of LaSalle's attorney's fees. We have jurisdiction under 28 U.S.C. § 1332(a) and 28 U.S.C. § 1291.

## II. Discussion

This court reviews a district court's grant of summary judgment de novo. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002). Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the burden to show that no genuine dispute as to any material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party establishes that it is entitled to summary judgment, the non-moving party then bears the burden to prove otherwise. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986). For purposes of summary judgment, evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). This court also reviews de novo a Rule 59(e) motion seeking reconsideration of a grant of summary judgment. *Columbia Gas Transmission, Corp. v. Ltd. Corp.*, 951 F.2d 110, 112 (6th Cir. 1991).

### A. Asphalt Overage Charges

Generally, the interpretation of a contract is reviewed de novo. *Meridian Leasing, Inc. v. Associated Aviation Underwriters, Inc.*, 409 F.3d 342, 346 (6th Cir. 2005); *Klapp v. United Ins. Grp. Agency, Inc.*, 663 N.W.2d 447, 451 (Mich. 2003). If a contract uses clear and unambiguous language, the court should not look to extrinsic facts to establish the parties' intent. *Moore v. Kimball*, 289 N.W. 213, 215 (Mich. 1939); *Mich. Chandelier Co. v. Morse*, 297 N.W. 64, 67 (Mich. 1941) (finding that the "court does not have the right to make a different contract for the parties or to look to extrinsic testimony . . . when the words used by them are clear and unambiguous."). In making such a determination, the court reads the contract as a whole, giving the contract language its ordinary and natural meaning. *City of Wyandotte v. Consol. Rail Corp.*,

262 F.3d 581, 585 (6th Cir. 2001). Here, the contract specifies that Michigan law governs; we therefore apply Michigan law.

Section 5 of the contract pertains to "Changes/Claims." Section 5.2 provides that "any increase or decrease in the Subcontract price and time of performance resulting from changes shall be agreed upon in writing by the parties hereto in advance of performance of the work." Section 5.4 further defines the requirements for submitting a claim for an increase in price, stating that:

> Any claim for an *increase in the Subcontract price* or time for performance based upon Contractor's written or *verbal order . . .* must be made by Subcontractor to Contractor, *in writing*, within five (5) working days from the date of such claimed order, act or omission, or at such earlier date required by the Subcontract Documents *but in any event prior to starting work involved in the claim*; otherwise, the claim shall be barred. All such written claims must furnish full details and supporting documentation.

(emphasis added). Under Sections 5.2 and 5.4, the contract terms clearly and unambiguously require Gerken to submit a claim in writing *prior* to starting work involved in the claim. Gerken alleges that it provided daily reports regarding the volume of asphalt used, and sent LaSalle two letters regarding asphalt overages after completing the paving of the main areas. Gerken did not submit a claim for an increase in the contract price to cover asphalt overages in writing prior to commencing the work, however. Therefore, we find Gerken's claims for asphalt overages barred.

Gerken argues that its claim falls under Section 5.6, not Section 5.4. We disagree. Section 5.6 pertains to "extra work;" it states:

> To the extent that LaSalle, the Owner, or the Owner's Representative request that *extra work* be performed, including, but not limited to, R.F.Q.'s, Bulletins, C.C.D.'s, Field Orders, Field Directives, and the like, [Gerken] agrees to provide an accurate, detailed price quotation with detailed labor and material

> breakdowns (broken down by item) and associated back-up including man hours, daily reports, invoices, time sheets, receipts, etc… no later than seven (7) business days from the request for quote. If the work is to be performed on a time and material basis, this detailed pricing must be submitted within five (5) business days from the completion of the work. [Gerken] also agrees to provide any additional supplemental information/back-up requested (based on initial review of quotation) within five (5) business days of the request for any/all additional work items. To the extent [Gerken] fails to provide the requested quote(s) or supplemental information/back-up required, [Gerken] waives its right to any payment for the work and will be forced to accept the amount(s) (if any) determined by LaSalle, the Owner, or the Owner's representatives to be owed for the work. This paragraph only applies to extra work requested by the Owner, Owner's Representative, or LaSalle. *Nothing in this paragraph effects* [sic] *or impacts any other paragraph of this Agreement including, but not limited to, the requirement that all claims must be in writing*.

(emphasis added). In reviewing the four corners of the contract, we interpret the term "extra work" in context to pertain to additional work not previously included in the contract, not changes to work already encompassed by the contract. Here, the terms of the contract required Gerken to pave specific areas; costs incurred in doing so do not constitute "extra work." As such, Gerken needed to comply with Sections 5.2 and 5.4 before it could seek an increase in the subcontract price.

Even assuming the asphalt overages constituted "extra work" under a time and material basis, Gerken failed to submit the necessary detailed pricing within five business days from the completion of the work. While Gerken sent LaSalle a letter on December 20, 2007, that mailing did not contain the necessary information. In particular, the letter failed to provide the labor and material breakdowns by item with associated back-up as required in Section 5.6 including "daily reports, invoices, time sheets, receipts, etc." Gerken did not provide any additional details to LaSalle until at least March of 2008.

Gerken also argues that it has raised questions of fact regarding its right to payment for its asphalt overages. Specifically, it claims that LaSalle provided verbal assurances of payment for the overages on which it reneged. It also claims LaSalle breached the contract by not providing suitably graded surfaces in a timely manner. While the question of whether the overages were the result of underbidding or weather conditions forced upon Gerken by the grading delays is one of fact, like the district court, we do not need to reach that issue because Gerken failed to comply with the writing requirements of Section 5 of the contract.

Thus, while issues of fact are in dispute, they are not material to the parties' respective obligations under the contract. Absent a written claim, we do not get to those factual disputes. We reach the same conclusion with respect to Gerken's argument regarding oral promises of payment. The parties' contract required that all changes relating to the price of current work be in writing. Neither party could circumvent that obligation.

## B. Attorneys' Fees

This court reviews the interpretation of a contract de novo. *Meridian Leasing*, 409 F.3d at 346. The right to attorneys' fees is a legal issue, and Gerken does not dispute that the contract provides this right. Gerken claims only that the fee provision is void as an improper penalty and that the fee award, even if permissible, was excessive. The district court granted LaSalle's motion for attorneys' fees, finding LaSalle entitled to attorneys' fees under Section 13.4 of the Subcontract because LaSalle prevailed on summary judgment. Order at 2-3, *Gerken Paving*, No. 10-cv-14905, ECF No. 38. While LaSalle's attorneys' fees amounted to $48,827.00, the district court granted a reduced amount of $27,219.55 based on LaSalle's agreement to accept the remainder of the retainage as its attorneys' fees. *Id.* at 3.

11

This court reviews the magnitude of a district court's fee award for an abuse of discretion. *Hamlin v. Charter Twp. of Flint*, 165 F.3d 426, 436 (6th Cir. 1999) (citation omitted). "A district court abuses its discretion when it applies the incorrect legal standard, misapplies the correct legal standard, or relies upon clearly erroneous findings of fact." *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 230, 237 (6th Cir. 2003) (quoting *Schenck v. City of Hudson*, 114 F.3d 590, 593 (6th Cir. 1997)).

Section 13.4 of the contract states that "[Gerken] shall also pay for all of [LaSalle's] attorney's fees and costs of litigation . . . if the decision / dollar amount is in partial or full favor of [LaSalle]."[3] Because the district court entered summary judgment in favor of LaSalle, LaSalle is entitled to attorneys' fees per Section 13.4. Still, an award of attorneys' fees is limited to a reasonable fee. *See Zeeland Farm Servs., Inc. v. JBL Enters., Inc.*, 555 N.W.2d 733, 736 (Mich. Ct. App. 1996) (contract may include provision to pay other side's attorneys' fees, but recovery is limited to reasonable attorney fees). Although the court stated that it "need not review the *Smith* factors[4] because Defendant agreed to the reduced amount of $27,219.55," the district court found that the Defendant "demonstrated the reasonableness of the fees and its compliance with [the *Smith* factors]." Order at 3, *Gerken Paving*, No. 10-cv-14905, ECF No. 38. It also noted that the "Defendant demonstrated its diligence in reporting hours and provided evidence that the hourly rates charged compare with the prevailing rates within the community for similar

---

[3]Gerken's brief points to Section 7.3, which relates to indemnity. Appellant Br. 33. The section at issue, however, is Section 13.4, which relates to attorneys' fees regarding dispute resolution.

[4]The Supreme Court of Michigan in *Smith v. Khouri* described several non-exclusive factors to consider in determining reasonable attorneys' fees: (1) the professional standing and experience of the attorney; (2) the skill, time and labor involved; (3) the amount in question and the results achieved; (4) the difficulty of the case; (5) the expenses incurred; and (6) the nature and length of the professional relationship with the client. 751 N.W.2d 472, 478-79 (Mich. 2008).

services." *Id.* The court then calculated the hourly rate for the reduced figure to be approximately $104.00 per hour, and characterized that as a "reasonable fee." *Id.* Gerken does not seriously contend that an hourly rate of $104.00 is unreasonable.

Instead, Gerken asserts that the contract provision requiring it to pay for "all of Contractor's attorney's fees and costs of litigation" is a penalty and void because it requires a "fixed fee." The contract provision, however, does not constitute a "fixed fee." A "fixed fee" has "no necessary relationship to the actual services performed." *Wilson Leasing Co. v. Seaway Pharmacal Corp.*, 220 N.W.2d 83, 87 (Mich. Ct. App. 1974). The cases Gerken cites include a set amount with no relationship to the actual services performed. *See Kittermaster v. Brossard*, 63 N.W. 75, 75-76 (Mich. 1895) (provision requiring party to pay forty dollars); *Wright v. Traver*, 41 N.W. 517, 517-18 (Mich. 1889) (attorney fee pre-set as a percentage of recovery); *Bullock v. Taylor*, 39 Mich. 137 (1878) (provision requiring payment of an attorney's fee of fifteen dollars). Unlike a "fixed fee," the attorneys' fees here were calculated based on the services performed by attorneys in this litigation, not an amount fixed in advance. As such, it is not a penalty.

Gerken argues that the attorneys' fee provision also runs afoul of Rule 1.5 of the Michigan Rules of Professional Conduct which states that "[a] lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee." Gerken claims that the lack of any express reasonableness limitation in the provision renders it necessarily unreasonable and excessive. Gerken further argues that the provision requiring the payment of "all" attorneys' fees invites inflation of attorneys' fees. We do not find Gerken's arguments persuasive nor do we find any need to address hypotheticals removed from the situation at hand. As noted above, the contract provision allows for all attorneys' fees and costs if LaSalle prevails. After

13

determining that LaSalle prevailed, the district court found LaSalle demonstrated that the fees are reasonable. It also did not find any inflation of the requested fees. We find no error in those conclusions.

Because the contract provides for attorneys' fees if LaSalle prevails, and the district court did not abuse its discretion in awarding fees, we affirm the award of attorneys' fees for the amount constituting the remainder of the retainage.

## C. Retainage

Sections 2.4 and 2.5 of the contract allowed LaSalle to withhold a percentage of the fixed price to guard against any breach by Gerken, including a failure of timely or proper performance. LaSalle then had the right to apply the retained money to the cost of completing or repairing Gerken's work. Here, LaSalle retained ten percent of the contract price because Gerken did not pave the outlot or complete certain punchlist items. At the summary judgment motion hearing, LaSalle "acknowledged that it owed Gerken the retention amount minus the cost of paving [the] outlot, the cost of which LaSalle calculated to be $24,880.00." *Gerken Paving*, 2012 WL 3079249, at *7.

Despite LaSalle's concession, Gerken claims that questions of fact exist regarding alleged breaches of contract because LaSalle: (1) failed to have the outlot ready for paving; and (2) denied a price change reflecting an increase in the price of petroleum for the outlot asphalt mix. The district court, however, found that LaSalle did not appear at fault for the delay. Also, Gerken admits that the City of Northwood, not LaSalle, "wisely refused" to allow paving the outlot to proceed based on the weather conditions. Appellant Br. 8, 26. The denial of the price change also does not raise a question of material fact. No factual dispute exists that the contract already required Gerken to pave the outlot and permitted LaSalle to pay for any unfinished work

14

using the retainage. Section 2.4 of the contract provides that LaSalle may use the retainage to cover the "entire cost" of paving the outlot, not just the amount it would have cost Gerken. When Gerken refused to pave the outlot, LaSalle paid another company $20,000 to complete this work. LaSalle paid this amount with money from the retainage.

Gerken also asserts it had no obligation to complete the punchlist items. While the district court listed the cost of paving the outlot as $24,880, LaSalle admitted that paving the outlot only cost $20,000. The amount of the cost of completing the punchlist items is unclear; the parties and the district court have listed varying figures between $4,000 and $4,880 as potential punchlist costs.[5] The district court even noted that "[t]he record is unclear regarding what punchlist items were requested and whether or not Plaintiff failed to complete them." *Gerken Paving*, 2012 WL 3079249, at *3. The district court also failed to address Gerken's arguments regarding the waiver of warranties and the impact of those waivers on its obligation to complete the punchlist items. LaSalle did not respond to these allegations in its brief; LaSalle only noted that it had to pay another contractor to complete the items.

Despite the apparent errors in the district court opinion regarding the precise amount of the retainage that LaSalle had the right to retain, we find those errors or lack of clarity to be harmless. Any reduction in the amount LaSalle had the right to charge for those items would have been recoverable as part of the award of attorneys' fees. A swing of a few thousand dollars in the size of the retainage could not have rendered a fee award unreasonable when the fee requested was over $20,000 less than the fees the trial court found actually and reasonably had

---

[5]LaSalle claimed they spent $20,000 on paving the outlot and "over $4,000" to fix issues on the punchlist. Aff. Scott Nemecek at 2, *Gerken Paving Inc. v. LaSalle Grp. Inc.*, No. 10-cv-14905 (E.D. Mich. Apr. 30, 2012), ECF No. 22 Ex. B.

been incurred. Therefore, we affirm the district court's grant of summary judgment regarding the retainage.

## III. Conclusion

For the reasons discussed above, the court affirms the district court's grant of summary judgment regarding the asphalt overages, the retainage, and the award of attorneys' fees for LaSalle.