NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 19a0142n.06

CASE NO. 18-1645

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

JOHN HANKINS,                                      )
                        *Plaintiff-Appellant*,     )
                                                   )        **FILED**
    v.                                             )     Mar 22, 2019
                                                   )   DEBORAH S. HUNT, Clerk
CITY OF INKSTER, et al.,                           )
                        *Defendants*,              )
_____            )
                                                   )
BARRY  SEIFMAN;  BARRY  SEIFMAN,                   )     ON APPEAL FROM THE UNITED
P.C.,                                              )     STATES DISTRICT COURT FOR
                                                   )     THE EASTERN DISTRICT OF
        *Third-Party Plaintiffs-Appellees*,        )     MICHIGAN
                                                   )
RAYMOND  GUZALL  III;  RAYMOND                     )
GUZALL III, P.C.,                                  )
                                                   )
        *Third-Party Defendants-Appellants*.       )

Before:  COLE, Chief Judge; BATCHELDER and DONALD, Circuit Judges.

    PER CURIAM.  This appeal stems from a dispute between two lawyers, formerly partners, over an attorney contingency fee derived from the monetary settlement in a civil action and the district court's judgment that resolved that dispute.  We AFFIRM.

**I.**

    In 2009, Barry Seifman and Raymond Guzall were partners in the law firm of Seifman & Guzall P.C. (the "Firm").  John Hankins, a fired police officer, retained the Firm, specifically Guzall, to bring an employment-discrimination action in federal court against the City of Inkster and the City's Police Chief ("defendants").  The district court scheduled trial for February 2012.

According to Guzall, in September 2011, Seifman revealed that he had been engaging in certain illegal and unethical conduct. This, Guzall claims, required him to quit the Firm to avoid potential prosecution as an accomplice. Seifman denies any such misconduct or wrongdoing.

When Guzall left the Firm in early February 2012, Hankins chose Guzall to continue his representation and discharged Seifman and the Firm. A few weeks later, on the eve of trial, the case settled with the defendants agreeing to pay Hankins a large monetary award, one-third of which would go to Guzall under the contingent fee agreement. But Seifman claimed that the Firm was entitled to that fee, filed a lien on Hankins's settlement, and moved to intervene. The district court granted the motion, ordered the defendants to remit one-third of the settlement amount (i.e., the attorney's contingent-fee amount) to the court for deposit in an interest-bearing escrow account, and permitted Seifman to file a third-party complaint against Hankins, the defendants, and non-party Guzall. Because the defendants paid the entire settlement amount and Hankins received his two-thirds, neither is an interested party at this stage of the case.

Meanwhile, Seifman had sued Guzall in Oakland County (Mich.) state court in February 2012, claiming that Guzall had improperly taken client files when he left. Guzall counter-claimed, accusing Seifman of numerous criminal and unethical acts. Despite the stipulated exclusion of the present fee dispute from that lawsuit, the district court held this case in abeyance pending the outcome of that action due to the similarities of the accusations and claims, and the risk of inconsistent judgments. Eventually, the state court held that Guzall had improperly taken the client files but that no other claims by either party remained because Guzall and Seifman had accepted their "case evaluations" (alternative-dispute-resolution decisions). The court closed the case. The Michigan Court of Appeals affirmed, *Seifman v. Guzall*, No. 328643, 2017 WL 187989 (Mich. App. Jan. 17, 2017), and the Michigan Supreme Court denied leave to appeal further, *Seifman v. Guzall*, 898 N.W.2d 604 (Mich. 2017). The district court reopened this fee-dispute.

2

The magistrate judge held a hearing but limited admissible evidence and argument to six issues: (1) the Firm's shareholder agreement between Seifman and Guzall; (2) when Guzall quit the Firm and when he told Seifman; (3) when and how Hankins told Seifman and Guzall he was firing the Firm; (4) when and how Hankins retained Guzall; (5) when and how Guzall took the Hankins file from the Firm; and (6) the hours Guzall and Seifman each spent on the case, their hourly rates, and whether Seifman was entitled to compensation in quantum meruit. The magistrate judge expressly and emphatically barred evidence, argument, or discussion regarding misconduct, specifically Guzall's accusations against Seifman: "We will not try the [Michigan state court] lawsuit de facto in the context of this evidentiary hearing on attorney fees." Three witnesses testified at the hearing (Hankins, Guzall, and Seifman), and the magistrate judge admitted several documents, including the shareholder agreement. It was established that, at the time he left, Guzall was a 25% shareholder in the Firm. Guzall insisted the shareholder agreement was *not* a fee splitting agreement whereas Seifman insisted that it was.

The magistrate judge issued a Report and Recommendation, which the district court, after thoroughly addressing and overruling Guzall's objections to it, adopted as its final judgment. The district court determined that Guzall's individual work on the case was reasonably quantified at 80 hours, at $300 per hour, for direct compensation of $24,000. The court did not award Seifman any direct compensation for work on the case. Further, the court determined that the shareholder agreement was effectively a fee-splitting agreement, and the Hankins case was a corporate asset subject to that contractual agreement, but which Guzall had taken from the Firm. Therefore, the court held that Guzall was entitled to 25% of the Hankins contingency fee and the Firm (Seifman) to 75%. The court rejected Guzall's claims that Seifman breached the agreement and committed illegal acts, criticizing those claims as "improper attempts to circumvent the findings and conclusions of the Michigan state courts" and concluding that Guzall "previously agreed to dispose

3

of those claims in the [Michigan state court] case." Guzall had agreed that the district court—rather than the state court—would decide the contingency-fee issue and the district court explained that resolving attorney fee disputes is part of the overall litigation. Thus, its admission of Seifman into the suit and its judgment on that issue were not improper. Finally, the court rejected Guzall's claims that he was denied a fair opportunity to present evidence, as he was invited to and did present evidence at the hearing.

## II.

We review the district court's findings of fact for clear error and conclusions of law de novo. *See Alexander v. Local 496, Laborers' Int'l Union*, 177 F.3d 394, 402 (6th Cir. 1999). We review a decision on a Rule 24(b) motion to intervene for abuse of discretion. *Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir. 1989) ("permissive intervention . . . is clearly only reviewable under an abuse of discretion standard"). We also review a district court's evidentiary rulings for abuse of discretion. *United States v. Morales*, 687 F.3d 697, 701–02 (6th Cir. 2012).

Guzall presses eleven claims that fall into four general categories: (1) Guzall's accusations of Seifman's misconduct, (2) Seifman's intervention, (3) Guzall's costs in litigating the underlying case, and (4) the district court's treatment of the shareholder agreement as a fee-splitting agreement. As to Guzall's accusations of misconduct, *see* Appellant Br. p. 3–5 (issues 1, 2, 5, 9, and 10 in the Statement of Issues Presented), we affirm the district court's decision to refrain from adjudicating Guzall's claims, which overlap with the allegations of misconduct at the heart of Guzall's state court litigation. Guzall and Seifman accepted the case evaluation award to end that litigation, and under Michigan law, "acceptance of a case evaluation is essentially a consent judgment and res judicata applies to consent judgments." *Garrett v. Washington*, 886 N.W.2d 762, 766 (Mich. Ct. App. 2016) (quotation marks, editorial marks, and citations omitted). The district court properly applied res judicata and refrained from re-litigating those claims.

As to Seifman's intervention, *see* Appellant Br. p. 3–5 (issues 3, 4, and 11 in the Statement of Issues Presented), the district court did not abuse its discretion in permitting Seifman to intervene. *See Dean v. Holiday Inns, Inc.*, 860 F.2d 670 (6th Cir. 1988) (permitting attorney to intervene in similar context). And as to Guzall's costs, *see* Appellant Br. p. 5 (issues 7 and 8 in the Statement of Issues Presented), based on the factual record before us, the district court did not abuse its discretion in conducting the evidentiary hearing or determining his hourly rate and costs. *See Ecclestone, Moffett & Humphrey, P.C. v. Ogne, Jinks, Alberts & Stuart, P.C.*, 441 N.W.2d 7, 8 (Mich. Ct. App. 1989) (explaining "that the court has the discretion to assess reasonable attorney fees; there is no requirement for the court to assess actual attorney fees").

Finally, as to the shareholder agreement, *see* Appellant Br. p. 4 (issue 6 in the Statement of Issues Presented), Guzall argues the district court erred by interpreting the agreement as a fee-splitting agreement. "Generally, the interpretation of a contract is reviewed de novo." *Gerken Paving, Inc v. LaSalle Group, Inc.*, 558 F. App'x 510, 514 (6th Cir. 2014). Guzall complains that the district court improperly considered unpublished and out-of-state cases in its analysis. But Guzall cites no Michigan cases that counsel against a court's interpreting a shareholder agreement as a fee-splitting agreement in interpreting a contract. The district court did not err in considering nonbinding opinions where no binding authority spoke to the issue presented.

Guzall alternatively argues that, even assuming the shareholder agreement could be construed as a fee-splitting agreement, published opinions from the Michigan Court of Appeals demonstrate that quantum meruit is the appropriate vehicle for deciding Seifman's share of the attorney contingency fee. *See Ambrose v. Detroit Edison Co.*, 237 N.W.2d 520 (Mich. Ct. App. 1975); *Reynolds v. Polen*, 564 N.W.2d 467, 470 (Mich. Ct. App. 1997); *Ecclestone*, 441 N.W.2d at 8. But Michigan courts have held that the recovery-by-quantum-meruit rule can be displaced by a fee-splitting agreement. *See McCroskey, Feldman, Cochrane & Brock, P.C. v. Waters*, 494

N.W.2d 826, 827-28 (Mich. Ct. App. 1992) (enforcing a fee-splitting agreement between a lawyer and his former firm instead of apportioning a fee based on quantum meruit and opining that such agreements "should be encouraged"); *Torpey v. Secrest, Wardle, Lynch, Hampton, Truex, Morley, PC*, Nos. 234956, 234973, 2003 WL 21958289, at \*4 (Mich. Ct. App. Aug. 14, 2003) (holding that a "fee-splitting arrangement mandating that a percentage of fees obtained by a departing attorney for former firm cases be given to the firm as a way to compensate the firm for its work" was enforceable). Indeed, in both *McCroskey* and *Torpey*, the court noted that such fee-splitting agreements were "intended to eliminate the need for a quantum meruit analysis." *Torpey*, 2003 WL 21958289, at \*5; *accord McCroskey*, 494 N.W.2d at 828. Finally, in *Kohl, Harris, Nolan & McCarthy, P.C. v. Peters*, No. 275377, 2008 WL 183294, at \*2-\*3 (Mich. Ct. App. Jan. 22, 2008), the Michigan Court of Appeals even enforced a verbal fee-splitting agreement in which there was no specific provision governing fee allocation if a lawyer left the firm.

In this case, the shareholder agreement was a fee-splitting agreement with no provision governing fee allocation if either Seifman or Guzall left the firm and took a case with him. The district court, consistent with *McCroskey* and *Torpey*, determined that the fee-splitting agreement displaced the general rule and remained in force after Guzall left the Firm. Because we find likewise, we conclude that the district court did not err in reaching this conclusion.

**III.**

For the foregoing reasons, we AFFIRM the judgment of the district court.